Case 2:20-cv-00216 Document 24 Filed on 10/15/20 in TXSD Page 1 of 17

United States District Court
Southern District of Texas
**ENTERED**
October 15, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOSEPH P GARBARINI, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:20-CV-216 |
| | § | |
| JANAS RANGEL, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION
TO DISMISS CERTAIN CLAIMS, RETAIN CASE, AND DENY MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Joseph P. Garbarini is a Texas inmate appearing *pro se* and *in forma pauperis*. He filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§1915(e)(2), 1915A.

For purposes of screening, Plaintiff has stated: (1) an Eighth Amendment claim of deliberate indifference for monetary relief against **Food Service Manager Rangel Janas** in his individual capacity; and (2) an Eighth Amendment claim for injunctive relief against **Warden Evelyn Castro** in her official capacity as the party able to provide the injunctive relief should Plaintiff prevail. The undersigned will order service on these defendants.

The undersigned further recommends for the reasons set forth below that: (1) Plaintiff's claims for money damages against all Defendants named in their official capacities be **DISMISSED** as barred by the Eleventh Amendment; (2) the unnamed

McConnell Unit food service managers be **DISMISSED** from this action; and (3) Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (D.E. 3) be **DENIED**.

## I. JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II. PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is currently housed at the McConnell Unit in Beeville, Texas. Plaintiff's allegations in this case arise in connection with his current housing assignment.

On August 24, 2020, Plaintiff filed this prisoner civil rights action under 42 U.S.C. § 1983 against Food Service Manager Rangel Janas, Warden Evelyn Castro, and unnamed McConnell Unit food service managers. (D.E. 1). Plaintiff claims that Defendants acted with deliberate indifference to his serious medical needs by providing him with nutritiously-deficient and calorie-deficient meals. Plaintiff alleges that he has two medical conditions which impact the types of food he can eat. His first condition is a peanut allergy, and his second condition is a spastic muscle disorder. Plaintiff seeks injunctive relief in the form of being provided sack meals containing a variety of foods totaling no less than 2400 calories a day.

Plaintiff subsequently filed his First Amended Complaint against the same defendants. (D.E. 15). Plaintiff clarifies that he sues: (1) Defendant Janas in his individual and official capacities; (2) the unnamed McConnell Unit food service managers in their individual and official capacities; and (3) Defendant Castro in her official capacity. (D.E. 15, pp. 1-2).

Plaintiff alleges in his First Amended Complaint that Food Policy 13.07 allows each inmate the option of choosing a meat free tray for each meal during normal operations. (D.E. 15, p. 3). He further alleges that: (1) inmates who wish to receive a meat-free sack meal must submit an I-60 request to the kitchen; (2) he has been submitting I-60s to the kitchen for years; and (3) the kitchen continues to send him inappropriate meals. (D.E. 15, pp. 3-5). According to Plaintiff, the kitchen served 76 sack meals from July 24, 2020 to August 18, 2020 averaging 607 calories per day. (D.E. 15, p. 5). Plaintiff seeks declaratory, injunctive, and monetary relief.

Plaintiff has filed a Motion for Temporary Restraining Order (TRO) and Preliminary Injunction in which he indicates that he is only eating about 600 calories per day. (D.E. 3). He asks the Court to direct Defendants to provide him with "sack meals containing a variety of food items that do not include meat or peanut butter and that have a daily calorie count of no less than 2400" calories. (D.E. 3, p. 3).

On August 27, 2020, the undersigned ordered the Office of the Attorney General (OAG) to submit a response to Plaintiff's Motion for TRO and Preliminary

Injunction and a *Martinez*[1] report to assist the Court in evaluating whether a preliminary injunction is warranted. (D.E. 10). The OAG subsequently has filed both its *Martinez* report and its response to the Motion for Preliminary Injunction. (D.E. 17, 21).

### III.     *Martinez* Report

The OAG has submitted a *Martinez* report consisting of: (1) Exh. A - Plaintiff's Grievance Records for the time period from June 8, 2020 to September 14, 2020 (D.E. 17-1); (2) Exh. B - Affidavit of Dr. Steven Bowers (D.E. 17-2); (3) Exh. C. - Plaintiff's relevant medical records from July 1, 2020 to September 14, 2020 (D.E. 17-3); (4) Exh. D - Affidavit of Douglas Sparkman regarding the meal service provided to Plaintiff from July 1, 2020 to September 2020 (D.E. 17-4); and (5) Exh. E – TDCJ's relevant food and meal plan policies (D.E. 17-5).

As part of the *Martinez* report, Dr. Bowers reviewed Plaintiff's medical records and determined that Plaintiff's medical history consists of a peanut allergy, Gastro-Esophageal Reflux Disease (GERD), Irritable Bowel Syndrome, Fecal Incontinence, Unspecified Urinary Incontinence, and Other Headache Syndromes. (D.E. 17-2, pp. 3-4). In accordance with the applicable Correctional Managed Health Care (CMHC) Policy F-47-1, Plaintiff's peanut allergy was noted in his electronic health record. (D.E. 17-2, p. 4).

Dr. Bowers reports that Plaintiff's weight has fluctuated between 167 and 175 pounds between January 8, 2019 and July 9, 2020. (D.E. 17-2, p. 6). Based on his Body

---

[1] *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *Cay v. Estelle*, 789 F.2d 318, 323 n. 4 (5th Cir. 1986). *See also Cay v. Estelle,* 789 F.2d 318, 323 n. 4 (5th Cir.1986) (Fifth Circuit approved of the use of *Martinez* Reports in order to develop the factual basis of inmate claims).

Mass Index (BMI) score of 25 on July 9, 2020, where he weighed 172 pounds, Plaintiff is considered to be overweight. (D.E. 17-2, p. 7). Dr. Bowers review of Plaintiff's medical records since July 2020 does not reveal any complaints regarding weight loss, gastro-intestinal issues, or spastic colon. (D.E. 17-2, p. 8). Rather, Plaintiff only sought renewal of certain medications and supplies. (D.E. 17-2, p. 8; 17-3).

Douglas Sparkman, the TDCJ's Assistant Director of the Laundry, Food, and Supply Division states that the TDCJ provides one of the following three tray options at every meal: (1) a regular tray; (2) a meat-free tray; and (3) a pork-free tray. (D.E. 17-4, p. 2). Pursuant to the TDCJ's Therapeutic Dietary Policy and Procedure Manuel, these menu plans do not require a nutrition consult of a medical provider's order. (D.E. 17-5, p. 11 ).

The TDCJ food service department is responsible for preparing and serving certain therapeutic diets. (D.E. 17-4, p. 2). These therapeutic medical diets are prescribed only by qualified healthcare providers, such as physicians, dentists, and midlevel practitioners. (D.E. 17-4, p. 2). When a therapeutic diet is ordered for that offender, the diet is entered into the electronic medical record. (D.E. 17-4, pp. 3, 8). In addition, the offender is added to the master diet list (D.E. 17-4, p. 3).

On January 6, 2012, a medical provider first reported that Plaintiff had a peanut allergy and reported it into the TDCJ's Offender Services Tracking System (OSTS) at that time. (D.E. 17-2, pp. 3-4; D.E. 17-4, pp. 3, 6). While Plaintiff has a peanut allergy, he was not prescribed a therapeutic diet. (D.E. 17-4, p. 3). According to Mr. Sparkman, the TDCJ food services department during the Covid-19 pandemic has been providing

nutritionally sufficient snacks to offenders three time a day with the daily caloric amount of the daily meals containing 2,200 calories per day. (D.E. 17-4, p. 3). Typically, an inmate with a peanut allergy is served a cheese sandwich, a chicken patty sandwich, a lunchmeat sandwich, or another suitable substitute for a peanut butter and jelly sandwich. (D.E. 17-4, p. 3).

## IV. LEGAL STANDARDS

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d

322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id*.

    A *Martinez* report is "a tool" to be used to further develop the factual basis of an *in forma pauperis* or prisoner complaint in order to determine whether *sua sponte* dismissal is appropriate. *Wiley v. Thompson*, 234 F. App'x 180, 182 (5th Cir. 2007) (per curiam). For instance, "[a] court may base a dismissal under [§ 1915A or] … § 1915(e) on medical or other prison records if they are adequately identified and authenticated, such as those included in a *Martinez* report, and medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference to serious medical needs." *Ruiz v. Mercado*, No. M-14-921, 2016 WL 1166040, at *2 (S.D. Tex. Feb. 10, 2016) (internal quotations and citation omitted). However, information provided through "[a] *Martinez* report may not be used to resolve

material disputed fact findings when they are in conflict with the pleadings or affidavits." *Newby v. Quarterman*, 325 F. App'x 345, 354 (5th Cir. 2009) (per curiam) (citing *Shabazz v. Askins*, 980 F.2d 1333, 1334-35 (10th Cir. 1992)).

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

V.   DISCUSSION

   A.   **Eleventh amendment immunity and Official Capacity**

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment, however, bars claims for money damages against a state or state agency. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998). As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself, and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ officers and officials acting in their official

capacities. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

To the extent that Plaintiff sues Defendants in their official capacities for money damages, those claims are barred by the Eleventh Amendment. Thus, it is respectfully recommended that Plaintiff's claims for money damages against Defendants in their official capacities be dismissed as barred by the Eleventh Amendment.

### B. Deliberate Indifference (Meals)

Plaintiff claims that Defendants acted with deliberate indifference to his health by serving him calorie and nutritionally-deficient meals. "The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (per curiam) (internal quotations omitted)).

Prison officials are required to provide humane conditions of confinement and ensure that inmates receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Conditions that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Hudson v. McMillian*, 503 U.S. 1, 8-10 (1992).

A constitutional violation under the Eighth Amendment occurs only when two requirements are met. "First, there is an objective requirement that the condition must be so serious as to deprive prisoners of the minimal civilized measure of life's necessities, as when it denies the prisoner some basic human need." *Woods*, 51 F.3d at 581 (internal quotations and citation omitted). To prove a constitutional violation, an inmate need not show that a death or serious injury already has occurred, but rather that there is a "substantial risk of serious harm." *Ball v. LeBlanc*, 792 F.3d 584, 593 (5th Cir. 2015) (citing *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004)).

"Second, under a subjective standard, [the court] must determine whether the prison official responsible was deliberately indifferent to inmate health and safety." *Woods*, 51 F.3d at 581 (internal quotations and citation omitted). Deliberate indifference is more than mere negligence. *Farmer*, 511 U.S. at 835. To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. *Id.* at 837.

On the issue of food, the prison system is not required to provide inmates with three meals a day. *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986). "The constitution requires only that inmates be provided with well-balanced meals, containing sufficient nutritional value to preserve health." *Davis v. Stephens*, No. 2:15-CV-211, 2015 WL 4887577, at *8 (S.D. Tex. Aug. 17, 2015) (citing *Green*, 801 F.2d at 770-71). Furthermore, "[w]ithout an allegation of resulting harm, complaints regarding food

service practices simply are not of constitutional dimension." *See Billizone v. Jefferson Parish Correctional Center*, No. 14-1263, 2015 WL 1897683, at *5 (E.D. La. Apr. 27, 2015) (internal quotations and citations omitted).

Taken as true, Plaintiff's allegations in this case reflect that: (1) he has two medical conditions, a peanut allergy and a spastic muscle disorder, which impact the types of food he can eat; (2) under TDCJ policy, he has the option of choosing a meat-free tray for each meal during normal operations; and (3) his I-60 requests for a meat-free sack meal have been ignored as the kitchen continues to send him calorie and nutritionally-deficient meals. Plaintiff's allegations, therefore, are sufficient at this stage to state a deliberate indifference claim with respect to the meals provided to him.

Accordingly, the undersigned respectfully recommends that Plaintiff's deliberate indifference claim regarding the meal service be retained against Food Service Manager Janas in his individual capacity for monetary relief. With regard to his request for injunctive relief, Warden Castro is the individual most likely able to fashion the relief Plaintiff is seeking regarding the meals provided at the McConnell Unit. Because Warden Castro appears to be best person to implement the injunctive relief requested, the undersigned respectfully recommends that Plaintiff's claim for injunctive relief be retained against Warden Castro in his official capacity.

Plaintiff also sues unnamed McConnell Unit food service managers in their individual and official capacities. Because Plaintiff fails to identify any of these food service managers, the undersigned respectfully recommends that they be dismissed at this time. Should further factual development of this case reveal that it is appropriate to add

other prison officials responsible for the meals served to Plaintiff, Plaintiff may seek to amend the complaint.

### C. Motion for TRO and Preliminary Injunction

Plaintiff has filed a Motion for TRO and Preliminary Injunction. (D.E. 3). To obtain a preliminary injunction under Federal Rule of Civil Procedure 65(a), the movant must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) the injunction will not disserve the public interest. *Texans for Free Enterprise v. Texas Ethics Com'n*, 732 F.3d 535, 536-37 (5th Cir. 2013). Injunctive relief is an extraordinary remedy which requires the movant to unequivocally show the need for its issuance. *Sepulvado v. Jindal,* 729 F.3d 413, 417 (5th Cir. 2013) (internal citations and quotations omitted). Plaintiff must carry the burden as to all four elements before a preliminary injunction may be considered. *Voting for America, Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013) (internal quotations and citations omitted).

In his motion, Plaintiff asks the Court to direct Defendants to provide him with "sack meals containing a variety of food items that do not include meat or peanut butter and that have a daily calorie count of no less than 2400" calories. (D.E. 3, p. 3). The OAG responds that Plaintiff is not entitled to a TRO because he seeks to change the status quo. (D.E. 21, pp. 3-5). The OAG further responds that Plaintiff cannot establish an entitlement to preliminary injunctive relief. (D.E. 21, pp. 5-24). In his reply, Plaintiff

maintains that he is currently suffering from malnutrition which will turn into starvation or death should the Court fail to intervene. (D.E. 23, p. 11).

### (1) TRO

A party may obtain a TRO without notice to the other side if:

(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

Plaintiff has alleged no facts in his motion showing that "immediate and irreparable injury, loss, or damage" occurred before the OAG could be heard in this case. He further provided no written certification of any efforts made to give notice or proffer any reasons why notice should not be required. Plaintiff's TRO request, therefore, is without merit.

### (2) Preliminary Injunction

### Likelihood of Success on the Merits

Plaintiff first must demonstrate a likelihood of success on the merits of his lawsuit in order to obtain preliminary injunctive relief. *Sepulvado*, 729 F.3d at 417. The undersigned has set forth above the governing law regarding deliberate indifference claims on the issue of meal service. While Plaintiff has alleged facts sufficient to state a deliberate indifference claim regarding the meals served to him, he has failed to show at this time a substantial likelihood that he will prevail on this claim.

The OAG has presented documentation showing that Plaintiff has a peanut allergy which was reported to the TDCJ's OSTS by a medical provider on January 6, 2012. (D.E. 17-2, pp. 3-4; D.E. 17-4, pp. 3, 6). Plaintiff has not been prescribed a medical therapeutic diet by a qualified healthcare provider as a result of his peanut allergy or any other medical condition. (D.E. 17-4, p. 3). Nevertheless, pursuant to applicable TDCJ policies, Plaintiff may be provided with a meat-free tray option which does not require a nutrition consult or a medical provider's order. (D.E. 17-4, p. 2; D.E. 17-5, p. 11).

Plaintiff alleges that, under the TDCJ's relevant policy, he has requested meat-free options from the kitchen but that the kitchen has failed to send him proper meat-free alternatives and instead provided him with calorie and nutritionally-deficient meals. As a as a result of the meals provided to him, Plaintiff further alleges that he is suffering the effects of malnutrition as a result.

To establish his deliberate indifference claim, however, Plaintiff must show that he has suffered harm as a result of the calorie and nutritionally-deficient meals being served to him. *See Billizone*, 2015 WL 1897683, at *5. Rather than show some concrete harm due to the meal service, Dr. Bowers' affidavit testimony and the medical records submitted by Plaintiff show instead that: (1) Plaintiff's weight has fluctuated very little, between 167 and 175 pounds, between January 8, 2019 and July 9, 2020 (D.E. 17-2, p. 6); (2) based on his BMI score of 25 on July 9, 2020, where he weighed 172 pounds, Plaintiff is considered to be overweight (D.E. 17-2, p. 7); and (3) Plaintiff's medical records since July 2020 do not contain any complaints regarding weight loss, gastro-intestinal issues, or spastic colon (D.E. 17-2, p. 8). Accordingly, Plaintiff has failed to

establish at this time a substantial likelihood of success on the merits of his deliberate indifference claim.

### Irreparable Harm

Second, in order to obtain preliminary injunctive relief, Plaintiff must show he will suffer irreparable harm if the injunction is denied. *Sepulvado*, 729 F.3d at 417. Such irreparable harm must be likely and not merely speculative or possible. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20-22 (2008).

As discussed above, the objective medical evidence submitted as part the *Martinez* report does not reflect that Plaintiff is currently suffering from irreparable or likely harm as a result of the sack meals being served to him. Thus, Plaintiff fails to demonstrate a substantial threat that he will suffer irreparable injury if the motion for preliminary injunction is denied.

### Remaining Elements

Under the third and fourth elements, Plaintiff must demonstrate that the threatened injury outweighs any damage that the injunction might cause the defendant and that the injunction will not disserve the public interest. *Sepulvado*, 729 F.3d at 417. Plaintiff's allegations of potential and speculative harm do not amount to a constitutional violation, and in the absence of such a violation, federal courts are reluctant to interfere in the internal affairs of a state prison. *See Richie v. UTMB Hospital Galveston*, No. 2:12-CV-322, 2012 WL 12871940, at *2 (S.D. Tex. Oct. 18, 2012) (citing *Kahey v. Jones*, 836 F.2d 948, 950 (5th Cir. 1988)). Court interference with the McConnell Unit's meal service would not be in the public's interest at this early stage in the proceedings. *See*

*Richie*, 2012 WL 12871940, at *2. Accordingly, Plaintiff has failed to demonstrate either the third or fourth elements of the preliminary injunctive standard.

## VI. RECOMMENDATION

For the reasons stated above and for purposes of § 1915A, it is respectfully recommended that the following claims be **RETAINED**: (1) an Eighth Amendment claim of deliberate indifference for monetary relief against **Food Service Manager Janas** in his individual capacity; and (2) an Eighth Amendment claim for injunctive relief against **Warden Castro** in her official capacity as the party able to provide the injunctive relief should Plaintiff prevail. The undersigned will order service as to these defendants by separate order.

It is respectfully recommended further that: (1) Plaintiff's claims for money damages against all Defendants named in their official capacities be **DISMISSED** as barred by the Eleventh Amendment; (2) the unnamed McConnell Unit food service managers be **DISMISSED** from this action; and (3) Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (D.E. 3) be **DENIED**.

Respectfully submitted this 15th day of October, 2020.

_____
Julie K. Hampton
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).